UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 17-CV-24666-UNGARO

MARCO WATTS,

    Plaintiff,

v.

CLUB MADONNA, INC., a Florida for-profit
corporation, and LEROY C. GRIFFITH,

    Defendants.
_____/

**PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS**

Plaintiff, MARCO WATTS ("Plaintiff"), by and through his undersigned counsel, and pursuant to Local Rule 56.1, lists the material facts which he contends are uncontroverted in the instant action and states the following:

**References to Leroy Griffith's Deposition as Corporate Representative (Exhibit "1")**

1. Club Madonna does not the pay the DJs that work at the Club. The DJs are paid [tips] by the dancers that work at the Club. (T.13:8-12).

2. Club Madonna has a standard rule that controls how the DJs are paid. (T.16:3-5).

3. The DJs were paid the same way in 2014, 2015, and 2016, and they are paid the same way today. (T.28:11-16).

4. The DJs at Club Madonna were required to sign in and out of work. (T.29-30:25-4).

5. It was the normal procedure at Club Madonna when Plaintiff worked there for DJs to sign in and out of work. (T.31:19-22).

6. Leroy Griffith, the owner of Club Madonna, attended the Department of Labor meeting with his attorneys on May 8, 2014. (T.35:12-16).

7. Club Madonna was aware that the DOL found that the DJs were not independent contractors. (T.32:5-14)

8. Leroy Griffith, the owner of Club Madonna, stated during his deposition as the corporate representative that the Department of Labor decided not to represent the DJs or the dancers because there was not any proof, and that the DOL "just gave it up." (T.35-36:22-5).

9. Club Madonna has no knowledge of any facts supporting Defendants' Third Affirmative Defense. (T.37:1-13).

10. Marco Watts was only paid tips from the dancers when he worked at Club Madonna. (T.38:9-12).

### References to Leroy Griffith's Individual Deposition (Exhibit "2")

11. Mangers can hire employees. (T.16:3-4).

12. Mr. Griffith has hired DJs. (T.16:15-24)

13. Mr. Griffith lets the other DJs hire other DJs. If he does not like a DJ, he tells the other DJ to replace them. (T.16:20-24).

14. Mr. Griffith delegates the hiring of the DJs to the managers and other DJs. (T.17:13-20).

15. If Mr. Griffith does not like the music that a DJ plays, he would say "you have to get rid of them." (T.17-18:22-9).

16. The dancers must tip out the DJ. (T.19:13-14).

17. Mr. Griffith does not know if the DJs submit demo tapes. The people who would know are the managers and the other DJs. (T.19-20:25-4).

18. Mr. Griffith is not certain whether he participated in the hiring of Plaintiff. (T.20:5-7).

19. DJs are not allowed to play any music they want. Club Madonna controls the music that the DJs are allowed to play. (T.20:16-19).

20. Club Madonna does not market the DJs that work at the Club unless they "bring in a real named DJ." The special DJ gets paid a salary to come in and work – [they] are paid per gig." (T.22-23:15-3).

21. Q. So would you agree with this statement, that **Marco Watts was** compensated in the form of cash provided by the performers for the benefit of Club Madonna?
A. Yes.
(T.25:13-17).

22. Club Madonna marketed the "real DJ" who came from an agency. (T.40:15-18).

23. Club Madonna never marketed Plaintiff as a DJ at the Club. (T.40:12-13).

24. The allure of the Club is the dancers. (T.21-22:25-3).

25. Plaintiff was paid for working at Club Madonna by receiving tips from the dancers. (T.24-25:25-4).

26. "Question: So would you agree with this statement, that Marco Watts was compensated in the form of cash provided by the performers for the benefit of Club Madonna? Answer: Yes." (T.25:13-17).

27. Leroy Griffith: "That's the way he got paid. He worked there for two years for me. How he worked and never got paid from us, he worked there all those years for nothing?" (T.25:20-23).

28. When asked if Plaintiff Watts ever signed an independent contractor agreement, Mr. Griffith stated that "If he worked there, I had him sign it." (T.28:20-24).

29. Club Madonna guarantees that the DJs will make at least $100 per shift. If the DJ does not make $100, then Club Madonna pays them the difference in cash. (T.30:1-5).

30. Plaintiff was not able to set the amount that the dancers tipped him. (T.30-31:25-3).

31. Mr. Griffith reviewed the dancer tip sheets that the DJs were required to keep and turn in to Club Madonna. (T.32:7-8).

32. Club Madonna provides the music that the DJs play. DJs are not required to bring their own music. (T.33:6-15).

33. Club Madonna provides the microphone for the DJs. (T.33:16-18).

34. Club Madonna provides the computer and speakers for the DJs to use at the Club. (T.33:19-21).

35. Club Madonna provides the speaker and PA system for the DJs to use at the Club. (T.33:22-24).

36. Club Madonna provides the music that the DJs play, as well as providing the microphone, the computer and speakers, as well as the PA system for the DJs to use at the Club. (T.33:6-24).

37. Robert Treitag was a DJ that worked at Club Madonna in May of 2014 and Mr. Griffith participated in his hiring. Mr. Treitag signed an independent contract agreement which was countersigned by Leroy Griffith. (T.35:3-7).

38. During the time that Plaintiff worked at Club Madonna, the Club did not utilize a time clock. (T.45:7-9).

39. Plaintiff was required to sign in and sign out from work when he worked at Club Madonna. (T.45-46:20-1).

40. Mr. Griffith regarding the working schedules of the DJs. "I didn't care who was back there as long as we had someone back there working." (T.47:12-13).

**References to Joseph Corvea's Deposition as Corporate Representative (Exhibit "3")**

41. Joseph Corvea started working at Club Madonna in 2006 as a manager and still works there today as a manager. He is the manager that has been there the longest. (T.10:5-20).

42. Plaintiff was a DJ at the Club. (T.14:25).

43. There was not any business relationship between Lazaro and Club Madonna to supply DJs. (T.19:5-6, 10-11, 16-17; 20:3-4).

44. Chris Lee is the DJ that is at Club Madonna today, and it is not his job to hire the DJs because the Club has a DJ computer that uses a special software to play music at the Club. (T.15:25-2).

45. The DJ Computer does not play specific songs that a dancer may want played. It only plays random music. (T.16:17-23).

46. The dancers prefer having a live DJ because they make more money. (T.27-28:24-7).

47. Defendants claim that Plaintiff was an independent contractor working as a DJ at Club Madonna. (T.17:6-9).

48. "The dancers are the essential part of the Club. The DJ is there because the dancers, the feel they dance better having a real DJ there, tell [the DJ] what music they want to [have] play[ed]." (T.22:10-18).

49. There is not an instance where a dancer went on stage and there was not any music playing. (T.23:12-15).

50. Club Madonna does not hire or pay the DJs so they are independent contractors. (T.27:12-16).

51. Dancers are not required to tip out the DJs. (T.28:8-12).

52. DJs are not allowed to set the amount that dancers are required to tip them. A DJ who set a required rate would be "sent home" by the Club. (T.31:11-20).

53. DJs are not allowed to play music that Club Madonna does not like. (T.41:8-11).

54. DJs were required to log in when they arrived at work, and were required to log out when they left work. *See also* sign in sheets provided. (T.45:23-2).

55. Plaintiff never missed a shift he was scheduled to work. (T.53:16-19).

56. Club Madonna is unaware of how many shifts Plaintiff Watts worked each week. (T.56:18-20).

57. Club Madonna is unaware of which shifts were Plaintiff's primary shifts each week. (T.56:15-17).

58. Club Madonna does not have any knowledge of whether Marco Watts worked more than or less than forty hours each week. (T.73:10-14).

59. Club Madonna did not have a time clock for the employees to clock in or clock out. (T.73:19-20).

60. There were no contracts between Marco Watts and Club Madonna. (T.56:21-24).

61. During the relevant time period Club Madonna was open for business seven days a week from either 6:00, 8:00 or 10:00 pm until 6 am. (T.59-60:22-7).

62. Club Madonna charges the dancers "rent" to perform at the Club. (T.60:17-18).

63. When asked what information Club Madonna has regarding the affirmative defense that Plaintiff was an independent contractor, the corporate representative responded that Plaintiff was not an employee because he did not work for Club Madonna and that they did not pay him. (T.65-66:17-4).

64. When asked which other Clubs Marco Watts worked at, Club Madonna stated "Yes, he worked at other clubs, I just don't know which ones." (T.70:14-18).

65. Club Madonna never promoted Marco Watts as a DJ that worked at Club Madonna. (T.79:20-24).

66. At Club Madonna, the customers do not come to see the DJ, they come to see the girls. (T.80:8-11).

67. The DJs working at Club Madonna do not require special skills. "Playing a song and saying next up on stage is Tiffany, first song of three." (T.83-84:24-9).

68. Club Madonna made rules that the DJs had to follow. (T.86:16-20).

69. It was standard procedure to have Plaintiff sign in on a form printed by Club Madonna and have his ID checked by a manager when he came to work each day. (T.89:3-13).

**References to Bruce Chiusano's Deposition (Exhibit "4")**

70. When Club Madonna opened at 8:00 pm, the DJs needed to be there at 8:00 or 8:30 pm. (T.13:15-24).

71. Club Madonna has a policy that managers are not allowed to date the dancers. (T.24:18-24).

72. Club Madonna has a policy that the DJs are not allowed to date the dancers. (T.26:13-14).

**References to Certification of Marco Watts (Exhibit "5")**

73. Plaintiff worked as a disc-jockey ("DJ") for Club Madonna from November 14, 2014 through March 9, 2016 (approximately 16 months). [¶2].

74. Plaintiff worked approximately 3 to 5 shifts per week from early in the evening (6 pm or 8 pm) until Club Madonna closed at 6 am. [¶3].

75. Plaintiff's shifts were 10 to 12 hours in length. [¶4].

76. On average, Plaintiff worked about 4 days per week, approximately 11 hours per shift (4 x 11 = @ 44 hours per week worked). [¶5].

77. Plaintiff was required to sign in and sign out for every shift. [¶6].

78. Club Madonna has produced only a portion of the DJ Stage Sheets, Daily Tip Reports and the sign in/sign sheets showing the days Plaintiff worked. [¶7].

79. Club Madonna has not produced any time records for the days Plaintiff worked. [¶8].

80. Due to his work schedule which had him working approximately 44 hours per week, Plaintiff was unable to work anywhere else during my employment with Club Madonna. [¶9].

81. Plaintiff did not own his own business when he worked at Club Madonna. [¶10].

82. Plaintiff did not work for himself or anywhere else during the relevant time period; Club Madonna was his full time job. [¶11].

83. Plaintiff was dependent on Club Madonna as his only source of employment and income. [¶12].

84. Plaintiff was presented with a schedule by Club Madonna and was required to work on those specific days.  Plaintiff did not have a say in regards to the days he wanted to work or the hours for which he wanted to be scheduled – except to trade my shifts with other DJs. [¶13].

85. Plaintiff was told how many days he was working in a week and could not negotiate or change this schedule. [¶14].

86. If Plaintiff argued or did not agree with the assigned schedule, he could be suspended by Club Madonna or threatened with termination. [¶15].

87. Plaintiff was terminated from his employment by a Club Madonna manager when Plaintiff refused to start his work day at 5:00 p.m. [¶16].

88. Club Madonna did not pay Plaintiff any wages. [¶17].

89. When he was hired, Plaintiff was told by management that he would receive from each dancer a $10 tip per shift. [¶18].

90. However, in reality, the tips from the dancers were discretionary. [¶19].

91. The amount of tips that Plaintiff received from the dancers varied and there no set amount. [¶20].

92. The amount of money that Plaintiff was tipped-out by the dancers was not commensurate with the amount that the dancers earned during a shift. [¶21].

93. If a dancer did not tip Plaintiff, there was nothing that he could do to enforce the $10 tip per dancer policy that was expressed to him by management when he was hired. [¶22].

94. Plaintiff was unable to negotiate with the dancers as to how much they tipped him. [¶23].

95. Plaintiff was required to attend mandatory meetings at Club Madonna once every few months regarding the renovations to Club Madonna as well as upcoming events. The meetings would last one to two hours. The mandatory meetings occurred on days that Plaintiff

was scheduled to work and also on days that he was not scheduled to work. When the meetings were scheduled on days that Plaintiff was working, he was directed by management to show up for work a few hours early. When the meetings were scheduled on days that Plaintiff was not supposed to work, he was told by management to come in to Club Madonna on his days off. Plaintiff was not compensated at all for attending these meetings. [¶24].

96. Plaintiff was never presented with an "Independent Contactor" contract, and he never signed one. [¶25].

97. Plaintiff was not aware of the terms in the "Independent Contractor" contract. [¶26].

98. Plaintiff's job could have been performed by a computerized music playlist, but the dancers preferred to have a live DJ because they felt that they earned more tips from customers when there was a live DJ. [¶27].

99. Regarding the music that Plaintiff played as a DJ at Club Madonna, 95% of the time, Plaintiff did not control the music during his shift. The songs which were to be played were dictated to Plaintiff by the dancers. There were also Club Madonna policies that Plaintiff had to follow regarding which music was allowed to be played. [¶28].

100. Plaintiff brought his personal laptop to work, but was not required to bring it in order to do his job. [¶29].

101. All of the equipment and music that Plaintiff was required to use was supplied by Club Madonna. [¶30].

102. During the time that Plaintiff worked for Club Madonna, he did not own any DJ equipment such as speakers, microphones, amplifiers or PA system. [¶31].

103. Club Madonna never marketed Plaintiff as a DJ at the Club. [¶32].

104. Prior to working at Club Madonna, Plaintiff worked as a DJ at Pink Pony. [¶33].

105. During the first few days of his employment at Club Madonna, Plaintiff was being trained to be a DJ at Club Madonna and he was transitioning from Pink Pony to Club Madonna. [¶34].

106. While working at Club Madonna, Plaintiff did not DJ at any other clubs, weddings, bar/bat mitzvahs or parties. [¶35].

107. Plaintiff did not have the ability to hire or fire other DJs or anyone else at Club Madonna. [¶36].

108. Plaintiff was required by management at Club Madonna to wear a specific uniform while working: long sleeved button collared black shirt and black pants. [¶37].

**References to Club Madonna's Response to Request for Admissions (Exhibit "6")**

109. The managers are employees of Club Madonna. [#2].

Dated: June 8, 2018                            Respectfully submitted,

                                               s/ Lowell J. Kuvin
                                               Lowell J. Kuvin
                                               Fla. Bar No.: 53072
                                               lowell@kuvinlaw.com
                                               Sundeep K. Mullick
                                               Fla. Bar No. 18175
                                               sunny@kuvinlaw.com
                                               Law Office of Lowell J. Kuvin, LLC
                                               17 East Flagler St., Suite 223
                                               Miami, Florida 33131
                                               Tel:   305.358.6800
                                               Fax:   305.358.6808
                                               *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy of the foregoing document to all counsel of record.

                                               By:   s/ Lowell J. Kuvin
                                                     Lowell J. Kuvin, Esq.